E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JENNA WILLIAMS (Cal. Bar No. 307975)
Assistant United States Attorney
Corporate and Securities Fraud Strike Force
DECLAN T. CONROY (Cal. Bar No. 350570)
Assistant United States Attorney
General Crimes Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2690/2872
     Facsimile: (213) 894-0141
     E-mail:    jenna.williams@usdoj.gov
                declan.conroy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-195-MEMF |
|---|---|
| Plaintiff, | OPSITION TO MOTION TO DISMISS THE INDICTMENT; EXHIBITS 1-8 (FILED UNDER SEAL) |
| v. | |
| KIMBERLY ANN MILETTA, | Hearing Date: Feb. 8, 2024<br>Hearing Time: 10:00 a.m. |
| Defendant. | Location:    Courtroom 8B |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jenna Williams and Declan T. Conroy, hereby files its Opposition to Motion to Dismiss the Indictment.

This Opposition to Motion to Dismiss the Indictment is based upon the attached memorandum of points and authorities, the files and

//
//

records in this case, and such further evidence and argument as the Court may permit.

Dated: January 19, 2024                Respectfully submitted,

                                            E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


                                                     /s/
JENNA WILLIAMS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.   INTRODUCTION.....................................................1

II.  STATEMENT OF FACTS...............................................3

III. ARGUMENT.........................................................7

    A.   The government's conduct surrounding the Rule 41
        Motion was not improper, let alone outrageous.............7

    B.   The Motion to Dismiss independently fails because it
        does not establish any nexus between the alleged
        outrageous government conduct and securing the
        indictment...............................................12

IV.  CONCLUSION......................................................14

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**Federal Cases**

Greene v. United States,
   454 F.2d 783 (9th Cir. 1971) ................................... 8

United States v. Black,
   733 F.3d 294 (9th Cir. 2013) ................................... 7

United States v. Dominguez-Caicedo,
   40 F.4th 938 (9th Cir. 2022) .............................. passim

United States v. Fernandez,
   388 F.3d 1199 (9th Cir. 2004) .................................. 7

United States v. Simpson,
   813 F.2d 1462 (9th Cir. 1987) .................................. 7

United States v. Williams,
   445 F.3d 724 (9th Cir. 2006) .................................. 14

**Federal Statutes**

18 U.S.C. § 1343 ................................................. 1

**Other Authorities**

Fed. R. Crim. P. 41 ......................................... passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

From 2013 until she was fired in 2018, defendant Kimberly Ann Miletta ("defendant") abused her position as President of Phoenix Books, Inc. ("Phoenix Books"), her control over Phoenix Books' finances, and the trust placed in her by J.O., the owner of Phoenix Books who also granted defendant power of attorney over her personal checking account, to embezzle over a million dollars for defendant's personal use. For her conduct, defendant is charged with five counts of wire fraud, in violation of 18 U.S.C. § 1343.

As part of the investigation into defendant's embezzlement, the government obtained federal search warrants for two of defendant's residences. During the search of those residences, the government seized approximately 41 digital devices and many boxes of paper documents. Upon review of the evidence in those devices and boxes, it became clear that, in addition to her financial crimes, defendant retained proprietary information and intellectual property belonging to Phoenix Books and its owner, J.O. (collectively, the "victims"), after the termination of her employment from Phoenix Books.

An attorney for the victims, Matthew Umhofer, contacted the government with a request to obtain copies of property that the government located and seized from defendant's residences during the execution of the search warrants, but that in fact belonged to the victims, and not defendant. That property was important to the victims, because the property that had been improperly retained by defendant (and, after the search warrants, was in the possession of the Federal Bureau of Investigation) included the only copies of important documents and assets that were critical to the operation of

Phoenix Books. Accordingly, the victims intended to file a motion under Federal Rule of Criminal Procedure 41(g), which permits "[a] person aggrieved by . . . the deprivation of property" to file a motion for the return of that property. Because the seized property in the FBI's possession that was the subject of the Rule 41(g) motion did, in fact, belong to the victims, and because the victims further agreed to certain procedures that were designed to protect government resources, the integrity of the investigation, and defendant's right to privacy related to her own property, the government did not oppose the motion. Defendant was served with the victims' Rule 41 motion and the government's response, and was included in correspondence with the Court regarding the motion, but failed to file any objections.

Now, despite her failure to raise any objections at the time (which would have been heard and decided upon by a district judge), defendant claims that the government's actions were so outrageous and unconscionable that the exceedingly rare remedy of dismissal for outrageous government conduct is warranted. That is wrong. First, the government's response to the victims' Rule 41 motion was not improper at all, let alone outrageous. To the contrary, it was measured and transparent, and balanced the competing interests at hand, including carefully protecting defendant's property and privacy. Second, even if the government acted improperly in responding to the Rule 41 motion (which it did not), such conduct cannot support a motion to dismiss the indictment because there is no "nexus between [that] conduct and either securing the indictment or procuring the conviction." United States v. Dominguez-Caicedo, 40 F.4th 938, 949 (9th Cir. 2022) (alterations omitted). For those reasons, this Court should deny defendant's motion to dismiss the indictment.

2

## II. STATEMENT OF FACTS

Phoenix Books is an independent book and audio publisher that is owned by J.O. As part of its business, Phoenix Books acquires rights to literary and other works and sells those works as audiobooks or in other formats. From approximately 2009 to 2018, defendant was the president of Phoenix Books.

As the president, defendant had full control over the business, including its finances. In 2018, J.O. had an internal audit performed of the business. As a result of that audit, J.O. discovered that defendant had been misappropriating money for her personal use, and terminated defendant's employment.

Mr. Umhofer, an attorney for J.O. and Phoenix Books, reported the suspected criminal conduct to the United States Attorney's Office. The crux of the complaint was that defendant had embezzled over a million dollars from the business for her personal use, and that she had taken and maintained valuable intellectual property and business records. After receiving this complaint and supporting documents, the government began an independent investigation of the alleged criminal activity.

In October 2019, during its investigation, the government obtained a federal search warrant for two residences linked to defendant. The affidavit in support of the search warrant detailed probable cause for various offenses, including wire fraud, conspiracy, aggravated identity theft, and theft of trade secrets.

During the execution of those warrants, the government seized several boxes of physical documents, as well as approximately 41 digital devices, including cell phones, laptops, flash drives, hard drives, and CDs. During the subsequent search of those boxes and

devices, agents determined that much of the seized property appeared to belong to Phoenix Books, including legal agreements, book/title inventories, logos, book graphics, manuscripts, emails, and other business records related to Phoenix Books-owned titles.

In approximately June 2020, Mr. Umhofer contacted the United States Attorney's Office on the victims' behalf regarding the possibility of obtaining documents and data seized by the government that was the property of Phoenix Books. (Ex. 1 at USAO_00022374, 00022379.) This was important to the victims because the property that had been improperly retained by defendant, and which was now in the sole possession of the FBI, included the only copies of important documents and assets that were critical to the operation of Phoenix Books. (Ex. 2 at USAO_0020823-24; Def's Motion to Dismiss (Dkt. 46) ("Mot."), Ex. C at USAO_00001210.)

At that time, the government contacted defense counsel to notify defendant of the request and of the government's intent to permit the copying of records, and to provide defense counsel and defendant an opportunity to raise objections to the victims' request. (Ex. 1 at USAO_00022374.) In September 2020, defense counsel requested additional time to consult with defendant regarding the request, and to possibly raise objections. (Id. at USAO_00022375; id. at USAO_00022378-79 (email from defense counsel).) Defense counsel never communicated with the government again on this matter, and never raised any objections. (Id. at USAO_00022375.)

Many months later, in April 2021, the victims filed the motion for return of property under Rule 41(g) and a proposed order. (Exs. 2, 3.) The government filed its response to the Rule 41 motion in May 2021. (Ex. 1.) In its response, the government stated that it did not

4

oppose the relief requested. However, the government set forth in its response that its non-objection was conditioned on the application of specific rules to govern the process of copying and returning documents or data. Those rules were incorporated into the proposed order filed by the victims, and were specifically intended to protect government resources and defendant's privacy. Among other things, those rules required: (1) that the government identify all seized property which appeared to the government to belong to the victims, and provide copies of that information to both the victims and defendant; (2) with respect to electronic data, that the victims provide a storage device onto which the responsive data would be copied and thereafter provided to the victims; and (3) that all scanning of paper documents had to be done under the government's supervision (to protect the integrity of the evidence), but by a vendor to be paid for by the victims. (Id. at USAO_00022374.) With these constraints in place, the government believed that, under the unique circumstances present, the victims' request for return of property was appropriate, as the government viewed Phoenix Books and J.O. as "person[s] aggrieved . . . by the deprivation of property" as contemplated by Rule 41(g). (Id. at USAO_00022375.)

    The victims' motion and the government's response were served on defendant at the time they were filed. (Ex. 1 at USAO_00022382; Ex. 4 at USAO_00022444.) Additionally, before filing its response, the government filed a stipulation to continue the date for a response to the motion, which was also served on defendant. (Ex. 5 at USAO_00022386.) Defense counsel was also copied on communications with the Court regarding the motion. (See Ex. 6.) Defendant never

filed any position or objections to the Rule 41 motion, or to the government's response to that motion.

On May 26, 2021, the Court granted the motion and signed the proposed order submitted by the victims, which included the constraints requested by the government. (Ex. 7.) To effectuate the order, the government provided the victims with <u>copies of their documents or data only</u>, not any data or information belonging to defendant. With respect to digital devices, the government only provided victims with copies of devices that exclusively contained information belonging to the victims. Because the government had only agreed to copy devices in their entirety, rather than going piecemeal, file by file (or text by text, email by email, etc.) through the devices, the government created an inventory of each device that set forth whether the device appeared to contain Phoenix Books proprietary information, defendant's personal information, or both. (<u>See</u> Ex. 8.) A copy of the data on a digital device was only provided to the victims if that device contained exclusively information belonging to the victims. For any digital device that contained defendant's personal information or property, or for any device that contained a mix of the victims' property and defendant's, no copy was provided to the victims.

Ultimately, the government's investigation revealed that defendant embezzled over a million dollars from the victims for her own personal benefit, including thousands of dollars for services at a Beverly Hills MedSpa, a pet's veterinary bills, defendant's boyfriend's rent, first class airplane tickets for defendant, and more. In May 2022, defendant was indicted with five counts of wire fraud. (Dkt. 3.)

6

## III. ARGUMENT

### A. The government's conduct surrounding the Rule 41 Motion was not improper, let alone outrageous.

Dismissal of an indictment based on outrageous government conduct is "limited to extreme cases in which the defendant can demonstrate that the government's conduct violates fundamental fairness and is so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Black, 733 F.3d 294 (9th Cir. 2013). For example, government misconduct may warrant dismissal in rare situations where government agents "engineer[] and direct[] a criminal enterprise from start to finish," or use "excessive physical or mental coercion" to convince a defendant to commit a crime. Id. at 302 (quotations omitted). This is an "extremely high standard," id. at 298, and motions to dismiss on these grounds are commonly rejected even in seemingly egregious circumstances, see, e.g., United States v. Fernandez, 388 F.3d 1199, 1238-39 (9th Cir. 2004) (no outrageous government conduct where government informant threatened to murder defendant); United States v. Simpson, 813 F.2d 1462, 1465 (9th Cir. 1987) (no outrageous government conduct where government informant engaged in extended sexual relationship with defendant); Black, 733 F.3d at 303, 307 (no outrageous government conduct where government "created and staged" the "fictional" armed robbery at issue). Because of this high bar, the Ninth Circuit has "dismissed an indictment due to outrageous government conduct in a published opinion only once" (and over 50 years ago), where the government set up a criminal enterprise from start to finish by "suppl[ying] the equipment and raw material for a bootlegging operation" and being the criminal enterprise's "sole

7

customer." Dominguez-Caicedo, 40 F.4th at 948-49 (describing Greene v. United States, 454 F.2d 783 (9th Cir. 1971)).

The government's conduct here was not improper at all, let alone outrageous. The government's response to the victims' request was measured and appropriate, and attempted to balance the various competing interests, including the protection of government resources, the integrity of the investigation, the needs of crime victims, and defendant's right to privacy related to her own property. The victims' request, while unusual, was supported by facts that had arisen during the investigation. Through witness interviews and the search of the residences and digital devices, the government determined that defendant retained significant amounts of property belonging to Phoenix Books, including after her employment had been terminated and Phoenix Books had requested that the materials be returned. Moreover, the victims' attorney represented to the government that the return of the property belonging to the victims was important because such property included the only copies of certain documents and information necessary for the operations of Phoenix Books, or the only copies of valuable assets of the business. (Ex. 2 at USAO_0020823-24; Mot., Ex. C at USAO_00001210.) Accordingly, the government reasonably concluded that the victims had both an ownership interest in, and need for, the requested property.

Nevertheless, the government did not just return documents or digital devices en masse to the victims. Instead, the government undertook significant efforts, on its own accord, to ensure that the integrity of the investigation and defendant's privacy rights would be protected. As described above, the government provided copies of these materials, ensuring that all original evidence in the

8

investigation would be preserved. In doing so, the government created an inventory of each device, describing whether the device appeared to contain Phoenix Books proprietary information, defendant's personal information, or both. The government then only provided copies of devices that, in their entirety, exclusively contained Phoenix Books proprietary information. For those devices that contained defendant's personal property, or a mix of defendant's personal property and Phoenix Books property, the government did not provide copies to the victim. Similarly, with paper documents, the government only provided victims with copies of their own property, and did not provide victims with copies of any of defendant's property. Notably, the government provided defendant with a list and copy of every device and paper document for which it provided a copy to the victims under the Rule 41 process and, to date, defendant has not identified a single document or file whose production violates the Court's order or defendant's privacy interests.

Moreover, the facts underlying the Rule 41 motion make clear the government was not operating as an arm of Mr. Umhofer or the victims. The government required a court order, to ensure a neutral decision-maker approved of the government's position and plan for the copying and return of property, and to provide defendant an opportunity to raise any objections or concerns. The government ensured that defendant was provided notice and numerous opportunities to object. The victims funded the execution of this unusual request as much as possible, including by providing a vendor to complete the copying of information. In short, the government was in no way "colluding" with the victims; rather, the government acted deliberately,

independently, and transparently in managing the victims' request for their property.

Defendant's arguments to the contrary lack any merit. First, defendant claims that the government withheld "critical facts" from the Court, including by not properly describing defense counsel's objection to the Rule 41 request. (Mot. at 10-11.) This is demonstrably wrong in several ways. As a preliminary matter, defense counsel did not "object" at all -- he requested more time to consider the Rule 41 request, writing: "I am hereby requesting that you not do [sic] allow any such copying to take place until I have had time to consult with my client and obtain further directions from her and possibly lodge our objections." (Ex. 1 at USAO_00022378.) The government and the victims abided by this request, and the victims waited months before filing their motion. Defendant did not file or otherwise articulate any objections during these intervening months, nor were any such objections ever lodged with the district court. Additionally, when the government did file its position with the court, the government accurately described defendant's position. (See id. at USAO_00022375.) The government was under no obligation to include defense counsel's argumentative characterization of the government as an "adjunct arm" of the victim. Finally, the government attached the entire email from defense counsel as an exhibit, so the Court, did, in fact, receive the entirety of defense counsel's statements on the subject. (Id. at USAO_00022378.)

Second, defendant argues that the Court was never informed of the fact that defendant possessed the documents and data at issue "with the year's long consent of [J.O.'s husband], then [J.O.]," and that defendant had "total control of the finances at Phoenix Books,"

10

including access to all of the company's documents and passwords. (Mot. at 9-10.) But neither of these points helps defendant. The Court was informed that defendant had been a long-time employee of the company, and the government has never contended that defendant initial acquisition of the property at issue amounted to theft. The problem, however, was that defendant retained those materials after she was terminated and obligated to give those materials back, and after the company specifically requested that those materials be returned. As for the fact that defendant previously had "total control" over the company property, that is precisely what allowed defendant to carry out the charged crimes, but is ultimately irrelevant when considering whether defendant had a right to retain that property months after her termination. Moreover, had defendant believed that these were critical facts in the proceeding, she easily could have objected or raised these facts with the Court.[1]

Third, defendant claims that the proposed order submitted by the victims and agreed to by the government contained no "protective portion," so the victims "could have published every page on the internet, to the further prejudice of the defendant." (Mot. at 9, n. 3.) Not so. As set forth above, none of defendant's private information or property was provided to the victims. Of course, the victims could conceivably choose to publish their own proprietary information at any time, but that would be of no moment to defendant and would not involve the government in any way.

---

[1] Additionally, the supposed "critical" missing fact defendant cites comes from the search warrant affidavit. The fact obviously does not exonerate defendant, as it was part of the probable cause determination.

11

Fourth, defendant attempts to argue that the Court had no authority to grant the motion under Rule 41. But the plain language of Rule 41 permits any "person aggrieved" by a "deprivation of property" to move for its return. Fed. R. Crim. P. 41(g). Defendant cites no law that a victim could not be considered a "person aggrieved," particularly where that victim is the property owner. Regardless, a motion to dismiss for outrageous government conduct is not the proper forum to relitigate a Rule 41 motion that defendant never objected to in the first instance.

Finally, defendant argues that it is "unclear when or why the FBI began an investigation" of defendant, and that the victims' prompting was "a major, if not the only, factor." (Mot. at 7.) But there is absolutely nothing "outrageous" about the government beginning and pursuing an investigation because of a victim's report of a crime. Here, the government received a detailed report of a crime and performed an independent investigation into that tip. Defendant has not pointed to a single fact, apart from her wholly unmeritorious arguments surrounding the Rule 41 motion, that suggest the government was "colluding" with the victims, or performing anything other than a careful, independent investigation into the defendant's conduct.

**B. The Motion to Dismiss independently fails because it does not establish any nexus between the alleged outrageous government conduct and securing the indictment.**

A claim of outrageous government conduct is "a claim that government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed." Dominguez-Caicedo, 40 F.4th at 948-49. "Therefore, in order to secure dismissal of an indictment due to outrageous government conduct, a defendant

12

must show a nexus between the conduct and either securing the indictment or [ ] procuring the conviction." Id.

The fact that certain property was copied and returned to victims under Rule 41 cannot establish a basis for outrageous government conduct because that conduct had zero impact on securing an indictment or conviction in this case. The government obtained this evidence pursuant to a federal search warrant signed by a magistrate judge, demonstrating probable cause to search the relevant properties and devices. Defendant has not challenged that warrant. Whether the government returned copied versions of some of that evidence or not had no impact on the state of the evidence that the government had against defendant.

Defendant claims that the return of property under Rule 41 was "prejudicial" to her because J.O. will use the returned material to prepare for trial testimony. (Mot. at 12.) That argument is nonsensical. Whether or not the challenged material is relevant to any future trial testimony from J.O. is irrelevant to the question of whether J.O. had a right to the return of her own property or information. And separately, defendant does not and cannot challenge the government's right to possess such evidence, which includes the right to share such evidence with a potential trial witness to prepare that witness for trial. Additionally, there can be no improper prejudice from J.O. using her own property to prepare for her trial testimony on her own accord, should that be something she chose to do. The preparation of truthful trial testimony is "prejudicial" to defendant only in that it tends to prove her guilty of the charged offenses, which is not the type of unfair prejudice with which a motion for outrageous government conduct is concerned.

13

C.f. United States v. Williams, 445 F.3d 724, 730 (9th Cir. 2006) ("[A]ll evidence suggesting guilt is prejudicial to a defendant. The mere fact that the evidence will damage the defendant's case is not enough—the evidence must be unfairly prejudicial. . .") (internal quotations and alterations omitted). Regardless, defendant was not charged with theft of trade secrets, and the facts underlying the Rule 41 motion (defendant's retention of proprietary business information), though relevant to defendant's knowledge and intent related to her financial misconduct, is not main thrust of the wire fraud charges. Those charges will instead be proven primarily through various financial records and witness testimony surrounding defendant's misuse of the victims' funds.

Since there is no link between the alleged outrageous conduct and securing the indictment or conviction in this case, there is no basis for a motion to dismiss. Dominguez-Caicedo, 40 F.4th at 948-49.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion to Dismiss the Indictment.